UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| LIKOS OF TENNESSEE CORP., | ) | | |
| TED DOUKAS, | ) | | |
| ATHENA OF S.C., LLC, and | ) | | |
| FZA NOTE BUYERS, LLC, | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:16-CV-449-TAV-HBG |
| | ) | | |
| GEORGE A. BAVELIS, | ) | | |
| | ) | | |
| Defendant. | ) | | |

# MEMORANDUM OPINION

This civil case is before the Court on defendant's Motion to Dismiss [Doc 9], to which plaintiffs responded [Doc. 18], and defendant replied [Doc. 20]. Also before the Court is plaintiffs' Motion for Summary Judgment [Doc. 13], and Motion for Judicial Notice [Doc. 15]. For the reasons discussed herein, the Court will grant defendant's motion to dismiss, and deny plaintiffs' motion for summary judgment and motion to take judicial notice as moot.

## I. Background

This case arises due to a pending proceeding in Knox County Chancery Court, and follows other related litigations previously before this Court.

### A. Stooksbury Litigation and Settlement

On March 6, 2012, Robert T. Stooksbury was awarded a judgment against Michael L. Ross, as well as several of Ross's business entities, in the proceeding

*Stooksbury v. Ross, et al.*, No. 3:09-cv-498 ("*Stooksbury* I") [Doc. 1 p. 3]  Prior to the entry of judgment in *Stooksbury* I, plaintiff Ted Doukas, through his entity Athena of S.C., LLC ("Athena"), acquired two notes from Sun Trust Bank secured by collateral at a Ross property development known as Rarity Bay [*Id.* at 4].  In addition, Doukas, through his entity Likos, acquired ownership from Ross of a 24-unit apartment complex known as Vonore Apartments [*Id.*].

On November 30, 2011, Athena filed two complaints in Knox County Circuit Court against Ross and two of his entities, with each complaint based on one of the notes acquired from Sun Trust Bank [*Id.*].  Also on November 30, 2011, agreed judgments were entered in each Knox County Circuit Court case [*Id.* at 5].  Subsequent to the entry of these agreed judgments, on December 15, 2011, Ross and Doukas entered into a "Forbearance Agreement," in which Athena agreed to forbear collecting on the agreed judgments for ninety days, in exchange for Ross granting Athena a security interest in all of his assets [*Id.*].

Following the entry of judgment in *Stooksbury* I, this Court appointed Sterling Owen, IV, to serve as the Receiver over the Ross assets [*Id.*].  Upon being appointed, the Receiver identified as Receivership Assets a number of properties in which Doukas entities, but not Doukas himself, claimed an interest [*Id.* at 5–6].  As such, Athena, Likos, and American Harper (another Doukas entity) all asserted claims against Receivership Assets [*Id.* at 6].

2

Case 3:16-cv-00449-TAV-HBG   Document 29   Filed 02/22/17   Page 2 of 17   PageID #: 614

While the Receivership was in progress, Stooksbury filed a second lawsuit, *Stooksbury v. Ross et al.*, No. 3:12-cv-548 ("*Stooksbury* II") [*Id.*]. In addition to naming Ross and a number of his entities as defendants, Stooksbury also named Doukas, American Harper, Athena, and Likos as defendants [*Id.*].

On November 23–24, 2014, Doukas participated in a Judicially Hosted Settlement Conference, as a result of which Doukas and his entities agreed to settle their claims against Receivership Assets [*Id.* at 6–7]. In exchange, plaintiffs submit that the parties agreed that one or more of the Doukas entities, would be given free and clear ownership of two real properties, specifically a 24-unit and 48-unit apartment complex [*Id.*]. The terms of the settlement agreement, which were incorporated into a Report and Recommendation, indicated that Ted Doukas was to receive a 100% interest in the properties [*Stooksbury* I, Doc. 1423]. No party filed an objection to the terms of the settlement agreement as described in the Report and Recommendation, and the Court accepted the terms in full [*Stooksbury* I, Doc. 1437].

Subsequently, on August 17, 2015, the Receiver transferred the 24-unit and 48-unit apartment complexes via a quitclaim deed [Doc. 1 p. 7]. The Receiver executed the deeds to grantees: "Ted Doukas and/or Assigns" [*Id.*]. Shortly thereafter, on August 21, 2015, Doukas executed a document entitled "Assignment of Receiver's Quitclaim Deeds," in which he assigned the deeds to Likos [*Id.* at 7–8].

In 2016, Likos sought a loan from Pinnacle Bank of Nashville for $1,400,000 [*Id.* at 8]. As part of the closing of the loan, the Bank and/or the Title Company responsible

3

for closing the loan requested that Doukas execute quitclaim deeds to Likos for the 24-unit and 48-unit apartment complexes [*Id.*]. On April 20, 2016, Doukas did as requested and executed and filed two quitclaim deeds to Likos [*Id.*]. On May 5, 2016, Likos closed on the loan with Pinnacle Bank, granting Pinnacle Bank a security interest in the two apartment complexes [*Id.*].

    B.    **Ohio Bankruptcy Litigation**

Defendant currently has a Chapter 11 bankruptcy case pending in the United States Bankruptcy Court for the Southern District of Ohio [*Id.* at 9]. As part of that case, defendant has an adversary proceeding pending against Doukas [*Id.*]. Plaintiffs submit that that the case has been pending since October 2010, and has not resulted in any monetary judgment against Doukas or any of his business entities to date [*Id.*].

On May 16, 2016, defendant filed a complaint in Knox County Chancery Court, *Bavelis v. Doukas and Likos of Tennessee Corp.*, Case No. 191625-2, asserting that the April 20, 2016, execution of the quitclaim deeds from Doukas to Likos was a fraudulent conveyance, and requesting that the Chancery Court set aside the transfer [*Id.* at 2, 9]. In this Chancery Court proceeding, defendant also sought a temporary restraining order and preliminary injunction by the Chancery Court, which the Chancery Court granted [*Id.* at 9]. Defendant contended that he was entitled to this relief due to his pending claim in the Ohio bankruptcy proceeding [*Id.*].

Plaintiffs subsequently filed the present lawsuit, asking the Court to issue a writ to the Chancery Court of Knox County, enjoining the litigation between the parties in that

4

court, and instructing the Chancery Court to dismiss that case [Doc. 1]. Alternately, plaintiffs ask that the Court reform the Receiver's deed, making the property transfers to Likos, as opposed to "Ted Doukas and/or Assigns" [*Id.*].

## II. Standard of Review

Federal Rule of Civil Procedure 8(a) sets out a liberal pleading standard. To survive a motion to dismiss, a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief, 'in order to give [the opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions." *Id.* at 555.

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific

5

task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679. When considering a 12(b)(6) motion, the Court "may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Basset v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Furthermore, the Court may "take judicial notice of prior pleadings and proceedings when considering a motion to dismiss for failure to state a claim." *See Charter Oak Fire Ins. Co. v. Broan Nutone, LLC.*, 348 F. Supp. 2d 934, 937 (W.D. Tenn. 2004); *see also In re Continental Capital Inv. Servs., Inc.*, 439 B.R. 111, 118 (N.D. Ohio 2010) ("Other allowable sources that may be considered in ruling on a Rule 12(b)(6) motion include materials that are public records or are otherwise appropriate for the taking of judicial notice.").

## III.   Analysis[1]

In support of his motion to dismiss, defendant argues that plaintiffs' claim is barred by the Anti-Injunction Act ("the Act"). *See* 28 U.S.C. § 2283. In response, plaintiffs argue that the Act does not bar their claim, because one of the Act's exceptions applies. In conducting its analysis, the Court will take judicial notice of the pleadings and

---

[1] The Court notes that in filing a motion to dismiss, defendant did not include a certification indicating that the parties had conferred to determine whether the defect in the complaint might be cured by an amended pleading. Plaintiffs argue that due to this failure, the Court should deny defendant's motion to dismiss. Although failure to include this certification could serve as grounds for the Court to deny defendant's motion, the Court will not do so in this case. In reaching this determination, the Court is guided by the fact that the Order to Confer [Doc. 7] was issued prior to this case being reassigned to the Court, and more pertinent, considering the relief sought by the complaint it is unlikely that any amendment to the complaint would alleviate the need for defendant to file a motion to dismiss.

6

proceedings which took place before this Court in *Stooksbury* I and *Stooksbury* II. *See Charter Oak Fire Ins. Co.*, 348 F. Supp. 2d at 937.

### A. Whether the Anti-Injunction Act Bars this Lawsuit

Pursuant to the Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Thus, the Act "creates an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *See Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004). Because the "core message of the [Act] is one of respect for state courts," the exceptions are "narrow and are not to be enlarged by loose statutory construction." *See In re E.C. Morris Corp.*, 523 B.R. 77, 82 (B.A.P. 6th Cir. 2014) (quoting *Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988)). Importantly, the Supreme Court has instructed that "any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *See Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970).

Because plaintiffs ask the Court to enjoin *Bavelis v. Doukas and Likos of Tennessee Corp.*, a proceeding currently pending in Tennessee state court, the Act requires that the Court dismiss this federal case unless one of the Act's narrow exceptions applies. *See* 28 U.S.C. § 2283. As the Court has already noted, those three exceptions

7

are "(1) where Congress expressly authorizes, (2) where necessary in aid of the court's jurisdiction, and (3) where necessary to protect or effectuate the court's judgments." *Martingdale*, 361 F.3d at 302. Because plaintiffs do not contend that the first exception, that an injunction in this case has been expressly authorized by Congress, is applicable, the Court must consider whether either of the remaining two exceptions applies.

### 1. The "In Aid of the Court's Jurisdiction" Exception

In the complaint, plaintiffs submit that the second exception to the Act, the "in aid of the court's jurisdiction" exception, is applicable [Doc. 1 p. 11]. The Supreme Court has indicated that this exception implies that in certain situations "federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R Co.*, 398 U.S. at 295; *see also Brennan's Inc. v. Brennan*, 629 F. Supp. 2d 634, 640 (S.D. Miss. 2009) ("Put another way, an injunction is available under this exception where it is directed at conduct which, left unchecked, would have the practical effect of diminishing the [federal] court's power to bring the litigation to a natural conclusion."). The Sixth Circuit has further indicated that this exception will only apply in two scenarios, either where the case has been removed from state court, or where the "federal court acquires in rem or quasi in rem jurisdiction over a case involving real property before the state court does." *In re Life Inv'rs Ins. Co. of Am.*, 589 F.3d 319, 331 (6th Cir. 2009).

8

In arguing that this exception applies, plaintiffs assert that prior to the settlement in *Stooksbury* I, the Receiver took possession, custody, and control, of all assets of Ross and his various entities, including the apartments at issue. By the Receiver taking possession, plaintiffs argue, the Court gained *in rem* jurisdiction over the apartments. When the Receiver transferred the deeds to "Doukas and/or Assigns" as part of the settlement, plaintiffs emphasize that the Receiver was exercising the power of the Court, and thus, the Court's *in rem* jurisdiction. Plaintiffs further argue that because Doukas assigned and then transferred the deed to Likos, and because the Receiver executed the deed to "Doukas and/or assigns," Doukas's actions "were not independent of the Receiver's actions" [Doc. 18 p. 6]. Any claims defendant may have had against the properties, plaintiffs contend, should have been made during the pendency of the receivership, and prior to the Receiver executing the deeds.

The Court has considered this argument, and finds that it is not well taken. As an initial point, the Court notes that the Sixth Circuit has held that this exception is applicable when the "federal Court acquires in rem or quasi in rem jurisdiction over a case involving real property before the state court does." *In re Life Inv'rs Ins. Co. of Am.*, 589 F.3d at 33. The Court also notes that, at the time of the receivership, the Court acquired in rem jurisdiction over the relevant properties. *See Gilchrist v. Gen. Elec. Capital Corp.*, 262 F.3d 295, 302 (4th Cir. 2001) ("[W]hen it appointed the receiver, the district court created a receivership estate over which it had *in rem* jurisdiction . . . .").

9

Case 3:16-cv-00449-TAV-HBG   Document 29   Filed 02/22/17   Page 9 of 17   PageID #: 621

However, although this Court once had *in rem* jurisdiction over the property at issue in defendant's state court proceeding, the "in aid of the court's jurisdiction" exception is applicable only when necessary to prevent a state court "from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *See Atl. Coast Line R.R Co.*, 398 U.S. at 295. Therefore, in this case, the exception would be applicable only if the state court proceeding threatened to impair the Court's *in rem* jurisdiction over the properties, and prevented the Court from bringing its disposition of the properties to a "natural conclusion." *See Brennan*, 629 F. Supp. 2d at 640.

Considering this, the Court finds that the exception does not apply. Any jurisdiction which the Court had over the properties necessarily terminated when the Receiver executed the deeds for the properties to "Doulas and/or Assigns," which the complaint provides occurred nearly eight months prior to the conveyance at issue in the state court proceeding. When the Receiver executed the deeds, he disposed of the property, and thus, the Court reached a final disposition as to that property. *See Atl. Coast Line R.R Co.*, 398 U.S. at 295. Plaintiffs do not cite, and the Court is not aware, of any authority supporting the proposition that a district court retains *in rem* jurisdiction over receivership property after the property has been disposed of by the receiver. Additionally, the Court notes that the receivership itself has terminated [*Stooksbury I*, Doc. 1656].

10

In sum, because the Receiver executed the deeds to the relevant properties prior to the assignment at issue in the state court proceeding, and considering also the Supreme Court's instruction that "any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy," the Court finds that the "in aid of its jurisdiction" exception is inapplicable in this case. *See Atl. Coast Line R.R. Co.*, 398 U.S. at 297.

### 2. The Necessary to Protect or Effectuate Judgments Exception

In the complaint, plaintiff also contends that the third exception to the Act, the "necessary to protect or effectuate the court's judgments" exception, is applicable. *See Martingdale*, 361 F.3d at 302. This exception, known as the "relitigation exception," is "derived from principles of claim and issue preclusion, and it is intended to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." *See Fharmacy Records v. Nasser*, 806 F. Supp. 2d 1030, 1035 (E.D. Mich. 2011). However, the Supreme Court has stated that "deciding whether and how prior litigation has preclusive effect is usually the balliwick of the second court . . . so issuing an injunction under the relitigation exception is resorting to heavy artillery." *See Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011). As such, the Supreme Court has "taken special care to keep [the relitigation exception] strict and narrow." *Id.* In order for the relitigation exception to apply, two requirements must be satisfied: (1) "the issue the federal court decided must be the same as the one presented in the state

11

tribunal," and (2) the state court party "must have been a party to the federal suit, or else must fall within one of the few discrete exceptions to the general rule against binding nonparties." *Id; see also Fharmacy Records*, 806 F. Supp. 2d at 1035. In conducting this inquiry, "every benefit of the doubt goes toward the state court," and "an injunction can issue only if preclusion is clear beyond peradventure." *Smith*, 564 U.S. at 306.

The Court first considers whether plaintiffs satisfy the first requirement of the relitigation exception, which mandates that "the issue the federal court decided must be the same as the one presented in the state tribunal." *Id*. The issue in the state court proceeding is whether Doukas's execution of quitclaim deeds to Likos in April 20, 2016, was a fraudulent conveyance. Plaintiffs assert that this issue was already decided in the *Stooksbury* litigations, because pursuant to the *Stooksbury* settlement, the Receiver transferred the properties "Doukas and/or Assigns," and Likos is an assignee of Doukas.

This argument, however, is not well taken. The terms of the settlement agreement, terms to which plaintiffs did not object, state that "Ted Doukas will receive a 100% interest in [the properties]" [*Stooksbury* I, Doc 1423]. Neither these settlement terms, nor the subsequent transfer of the properties by the Receiver to "Ted Doukas and/or Assigns," purported to determine whether any subsequent transfers made by Doukas were fraudulent. Critically, defendant's state court action does not challenge the Receiver's act of transferring the properties pursuant to the terms of the settlement agreement, but rather challenges Doukas's subsequent act of transferring those properties to Likos over eight months later. As such, the Court finds that the issues determined in *Stooksbury* I and

12

*Stooksbury* II are not the same as the issues in the state court proceeding, and thus, that plaintiffs cannot satisfy the first requirement of the relitigation exception. *See Smith*, 564 U.S. at 306

In addition, the Court finds that plaintiffs cannot satisfy the second requirement of the relitigation exception. Because defendant was not a party in either *Stooksbury* I or *Stooksbury* II, nor was he involved in the judicially hosted settlement conference, the relitigation exception may only apply in this case if defendant falls within one of the "few discrete exceptions" serving to bind non-parties. *See Smith*, 564 U.S. at 306. Although not purporting to create an exhaustive list, the Supreme Court recognized, in *Taylor v. Sturgell*, a number of exceptions allowing for the binding of non-parties. 553 U.S. 880, 894–95 (2008). One situation contemplated by *Taylor* is when, in certain limited circumstances, "a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit." *Id.*

In this case, plaintiffs argue that defendant should be bound by the *Stooksbury* proceedings because the Receiver adequately represented the interests of all creditors of the individuals involved in the *Stooksbury* litigations, and as such defendant's interests were "adequately represented by someone with the same interests who was a party to the suit." *See id.* Plaintiffs do not advance any other argument as to why defendant should be bound by issues decided in the *Stooksbury* litigations under the relitigation exception.

The Court has considered this argument, and finds that it is not well taken. In *Taylor*, the Supreme Court set forth that the "adequately represented" situation applies in

13

"properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries." *See id.* The Receiver in this case, appointed by the Court, was a "neutral officer," charged with administering the Ross assets pending the resolution of the Stooksbury litigations. *See Sterling v. Stewart*, 158 F.3d 1199, 1201 n.2 (11th Cir. 1998). His interest in neutrally administering the Ross assets is not aligned with defendant's interest in collecting a possible future judgment against Doukas in another case, and the Receiver had no reason to advocate for defendant's interests. Plaintiffs have not cited, and the Court is not aware, of any authority for the proposition that a non-party may be bound by proceedings simply because of the presence of a court-appointed receiver. Therefore, the Court finds that defendant cannot be bound by issues decided in *Stooksbury I* and *Stooksbury II*.

In sum, considering that plaintiffs cannot satisfy either prerequisite for the relitigation exception to apply, and considering also the Supreme Court's instructions to narrowly construe the relitigation exception, the Court finds that the exception is not applicable to this case. *See Smith*, 564 U.S. at 306.

### 3. Additional Arguments

In arguing that an Act exception should apply, plaintiffs also assert that defendant should be bound by the proceedings in the Stooksbury litigation because defendant was aware of the *Stooksbury* proceedings, and even allegedly communicated with counsel in those proceedings. Plaintiffs further argue that under Tenn. Code. Ann. § 29-6-101, defendant had legal options at his disposal to bring a claim in the context of the

14

Receivership. This argument is not well taken. As the Court has already stated, there are only certain situations in which a non-party may be bound, and thus, subject to the relitigation exception. *See Smith*, 564 U.S. at 306. None of these situations are applicable to this case. Considering the Supreme Court's instructions not to expand the scope of the Act's exceptions by "loose statutory interpretation," the Court will not here expand the breadth of the Act in the manner advocated by plaintiffs. *See Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988).

Finally, plaintiffs raise a number of arguments which relate to the substance of the transfer from Doukas to Likos. Specifically, plaintiffs argue that the transfer is consistent with the Receiver's deed being executed to "Ted Doukas and/or Assigns," and also with the fact that Likos, as opposed to Doukas himself, asserted a claim against Receivership Assets. These arguments, the veracity of which defendant disputes, do not serve to place this case within an exception to the Act. Rather, these are arguments relate to whether the transfer from Doukas to Likos was fraudulent, and thus are more properly raised and considered in the state court proceeding.

In sum, the Court finds that no exception to the Anti-Injunction Act is applicable, and thus, that the Act requires that the Court dismiss this case.

### B. Reforming the Deed

In the complaint, plaintiffs state that if the Court does not wish to enjoin the state court proceedings, the Court should reform the Receiver's Deeds so that the grantee is "Likos" as opposed to "Ted Doukas and/or assigns." Plaintiffs contend that doing so will

15

eliminate any need for the state court litigation, as there will be no allegedly fraudulent transfer for defendant to challenge. Defendant argues that the Court may not reform the deed because the Receiver is not a party to this action, the Court lacks subject matter jurisdiction to reform the deed, and because reformation of a deed is only appropriate following a showing of "mutual mistake or a mistake by one party induced by the other's fraud." *See City of Memphis for Use & Benefit of State v. Moore*, 818 S.W.2d 13, 16 (Tenn. Ct. App. 1991).

The Court has considered the arguments of both plaintiffs and defendant, and finds that reformation of the deed in this case is not warranted. As the Court has noted, the Court no longer has *in rem* jurisdiction over the properties. Furthermore, the terms of the settlement agreement in *Stooksbury* I, terms to which plaintiffs did not object, indicated that "Ted Doukas will receive a 100% interest in [the properties]." [*Stooksbury* I, Doc. 1423].[2] The terms of the settlement agreement did not indicate that the properties would be transferred to Likos. Because the Court no longer has jurisdiction over the properties, and because the settlement agreement did not indicate that the properties would be transferred to Likos, the Court will not reform the Receivership Deeds as plaintiffs request.

---

[2] While Doukas submits that he did not assert any claims individually against Receivership assets in *Stooksbury* I, he was a party to the settlement negotiations [*See Stooksbury* I, Doc. 1423 p. 2].

## IV. Additional Pending Motions

The Court notes that plaintiffs also filed a Motion for Summary Judgment [Doc. 13], and a Motion for the Court to take Judicial Notice [Doc. 15] in connection with summary judgment motion. As the Court has found that plaintiffs' complaint fails to state a claim upon which relief may be granted, the Court will deny these motions [Docs. 13, 15] as moot.

## V. Conclusion

For the reasons discussed herein, the Court will **GRANT** defendant's Motion to Dismiss [Doc. 9], and **DENY as moot** plaintiffs' Motion for Summary Judgment [Doc. 13] and Motion to Take Judicial Notice [Doc. 15]. The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE